Timotheo RIVERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–01044–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 5, 2000.

---

Mark Stevens, San Antonio, for Appellant.

Scott Roberts, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

In this San Antonio backyard drama, a barbecue ended in murder. Gilbert Vas-quez went to the home of his friend, Abel Rivera, to watch the Tyson–Holyfield fight. By night's end, Vasquez was in the morgue. This unexpected conclusion to the evening was effectuated by two of Rivera's brothers, Timotheo and Gilbert, who alternatively stabbed and shot Vasquez until he died. Timotheo did the stabbing: six times. Gilbert did the shooting: three times. While there was evidence that Vasquez, the victim, had a bad disposition, he was not armed with a knife or a gun, or anything more dangerous than a can of beer.

Timotheo was convicted and sentenced to life imprisonment. Among other points of error, he contends that his stabbing did not cause the death of Vasquez. He says that his brother, Gilbert, who was doing the shooting, caused Vasquez's death.

Three points of error are directed at the guilt-innocence phase of the trial. We overrule these points and affirm the conviction. One point of error, directed to the dismissal of a juror, occurred in the punishment phase. We agree with this point and remand the cause for a new punishment hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.1999).

### WHO KILLED VASQUEZ?

In his first and second points of error, Timotheo asserts that the evidence is legally and factually insufficient to prove beyond a reasonable doubt that he murdered Vasquez.

### a. Standard of Review

(1) LEGAL SUFFICIENCY

The first step in resolving Timotheo's challenge to the sufficiency of the evidence is to determine whether the evidence presented at trial was legally sufficient to support the verdict. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). All of the evidence must be reviewed in a light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of

the offense beyond a reasonable doubt. *See Jackson v. Commonwealth of Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). The weight and credibility of the evidence is not re-evaluated (which would improperly cast the reviewing court in the role of "thirteenth juror"); instead, the issue is whether the jury reached a rational decision. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993). This standard of review applies equally to direct and circumstantial evidence. *See Myles v. State,* 946 S.W.2d 630, 636 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Kapuscinski v. State,* 878 S.W.2d 248, 249 (Tex.App.—San Antonio 1994, pet. ref'd).

(2) FACTUAL SUFFICIENCY

If the evidence is found to be legally sufficient, a review of the factual sufficiency of the evidence is proper. *See Clewis,* 922 S.W.2d at 133. In addressing factual sufficiency, the evidence is not viewed through the prism of "in the light most favorable to the prosecution;" rather, the jury verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 129. The Court of Criminal Appeals has called for this review to be appropriately deferential so as to avoid substituting the reviewing court's judgment for that of the jury. *See id.* at 133.

**b. *Is the Evidence Legally and Factually Sufficient?***

The court charged the jury that it could find Timotheo guilty under one of four alternative theories. The first two application paragraphs of the jury charge authorized the jury to find Timotheo guilty if the jury found that Timotheo acted in concert with Gilbert. The third and fourth application paragraphs of the jury charge permitted a conviction if the jury found that Timotheo caused Vasquez's death by cutting or stabbing him with a knife.[1]

(1) CONVICTION OF TIMOTHEO AS A PARTY

 The court charged the jury on a defendant's criminal responsibility as a party to an offense:

A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

*See* TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994). Direct evidence of complicity is not necessary; the State may use circumstantial evidence to prove the defendant's responsibility as a party to the offense. *See Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App.1986) (concluding that even if the court were to disregard the appellant's confession, the evidence would be sufficient to support a conviction under the law of parties). In order to support a conviction under the law of parties, the defendant must be physically present at the commission of the offense, encourage the commission of the offense by an agreement or "other words". *See Cordova v. State,* 698 S.W.2d 107 (Tex.Crim.App. 1985). Also, the evidence must show that at the time of the offense the parties were acting together, each contributing some part toward the execution of their common purpose. *See Brooks v. State,* 580 S.W.2d 825 (Tex.Crim.App.1979). "In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common de-

---

1. The last application paragraph incorrectly omitted the requirement that Timotheo's actions caused Vasquez's death. This error is discussed in our analysis of Timotheo's third point of error. The sufficiency of the evidence, however, is measured against a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 239–40 (Tex.Crim.App. 1997).

sign to commit the offense." *Burdine,* 719 S.W.2d at 315 (citations omitted).

■ There was sufficient evidence for a rational trier of fact to have found that Timotheo, as well as his brother, Gilbert, went to Abel's house for the specific purpose of hurting or killing Vasquez. They were both armed: Timotheo with a knife and Gilbert with a gun. They asked where Vasquez was as soon as they arrived. Gilbert told Abel, the host, not to get involved. Shortly thereafter, both Timotheo and Gilbert attacked Vasquez, stabbing, kicking, and ultimately shooting him. Vasquez died a short time later. Having accomplished what they came for, Timotheo and Gilbert left together. The evidence is both legally and factually sufficient to show that Timotheo and his brother acted together, each contributing his part to assault and kill Vasquez, which was their common purpose.

### (2) CONVICTION OF TIMOTHEO ON THE GROUNDS THAT HE CUT OR STABBED VASQUEZ

■ Timotheo asserts that because five of the six wounds that he inflicted were not likely to be fatal, particularly in light of the gunshot wounds inflicted by Gilbert, there is no legal basis for a conviction under the third or fourth application paragraphs. The State points out that the cause of death as explained by the medical examiner was "multiple gunshot and stab wounds." Timotheo, although conceding that he cut and stabbed Vasquez, argues that the stab wounds alone would not have killed Vasquez.

Timotheo stabbed Vasquez six times. Not all wounds were fatal wounds, but several were extremely serious. Among these was a penetration into the peritoneal cavity, another was a long deep wound that circled Vasquez's leg into his thigh muscle, and yet a third wound went into the lower part of the heart sac and continued into the liver. Extensive bleeding, both internally and externally, accompanied these wounds. Whether heroic medical treatment could have saved Vasquez's

life at that time will never be known because about that time Timotheo's partner, Gilbert, was shooting Vasquez. It is not necessary for this court to decide whether there was a chance that proper medical treatment could have saved Vasquez had he not been shot. "A theoretical rescue does not break the causal chain leading from" Timotheo's acts to Vasquez's death. *Cf. Arnold v. State,* 686 S.W.2d 291, 294 (Tex.App.—Houston [14th Dist.] 1985), *aff'd,* 742 S.W.2d 10 (Tex.Crim.App.1987). In *Arnold,* the court of appeals considered the effect of the fatal gunshot wounds, which "although sufficient by themselves to cause [the victim's] death, would not have killed [the victim] instantly." *Id.* The court overruled the appellant's point of error, concluding that the possibility of favorable medical treatment did not break the chain of causation between the defendant and the victim's death. *See id.*

■ The State need only prove that the stab wounds inflicted by Timotheo contributed to Vasquez's death. *See Umoja v. State,* 965 S.W.2d 3, 6 (Tex.App.—Fort Worth 1997, no pet.) (per curiam). In *Umoja,* several assailants beat the victim to death. *See id.* at 5. The medical examiner stated that all of the blows contributed to his death; he could not say with certainty *which* of the blows caused death. *See id.* at 9. As another court pointed out, "[c]onsequently, no proof existed to establish the other assailants' blows were *clearly* sufficient to have caused death and Umoja's blows were *clearly* insufficient." *Marvis v. State,* 3 S.W.3d 68 (Tex.App.— Houston [14th Dist.] 1999, no pet. h.). "The mere fact that appellant did not inflict the most damaging blow to the victim does not relieve him of responsibility for the victim's murder." *Umoja,* 965 S.W.2d at 6.

Although the medical examiner testified (and Timotheo concedes) that the most serious wound suffered by Vasquez was a gunshot wound inflicted by Gilbert, sufficient evidence exists as to the damage inflicted by Timotheo as well.

## JURY CHARGE

 In his third point of error, Timotheo asserts that the trial court committed fundamental error that egregiously harmed him when it charged the jury that it could convict him of murder by cutting and stabbing Vasquez with a knife under section 19.02(b)(2) of the Texas Penal Code without requiring the jury to find that Timotheo caused Vasquez's death. The State concedes that the charge was erroneous in the last application paragraph because the phrase "thereby causing the death of said complainant" was omitted. The State asserts that the error was harmless.

The applicable portion of the jury charge reads:

> Or, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of June, A.D.1997, in Bexar County, Texas, the defendant, Timotheo Rivera, did intentionally or knowingly cause the death of an individual, Gilbert Vasquez, by cutting or stabbing Gilbert Vasquez with a deadly weapon, to wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, thereby causing the death of Gilbert Vasquez;
>
> Or, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of June, A.D.1997, in Bexar County, Texas, the defendant, Timotheo Rivera, intending to cause serious bodily injury to Gilbert Vasquez, did commit an act clearly dangerous to human life, to wit: by cutting or stabbing Gilbert Vasquez with a deadly weapon, to wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, then you will find the defendant guilty of murder as charged in the indictment.

Under section 19.02(b)(2) of the Texas Penal Code, a person commits the offense of murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 1994). Because the fourth application paragraph omitted the requirement that the act "cause the death of an individual," it was erroneous.

 Timotheo did not make any objection to the instruction so the error does not require reversal unless it is so egregious and created such harm that Timotheo was denied a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We generally assess the actual degree of harm from "the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* Where a jury charge contains alternative theories of culpability, the harmfulness of error in the charge must be measured, at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge. *Atkinson v. State,* 923 S.W.2d 21, 27 (Tex.Crim. App.1996). No harm is shown where: (1) the evidence clearly supports the defendant's guilt under alternate theories unaffected by the erroneous portion of the charge; (2) the State relies most heavily on the alternate theories; and (3) it is very likely that the jury's verdict was based on an alternate theory. *Butler v. State,* 981 S.W.2d 849, 857–58 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd).

In this case, the evidence supported Timotheo's guilt under the alternate theories. During closing argument, the State concentrated on the law of parties and summarized the evidence by emphasizing that Timotheo and his brother were on a mission. The State only made a passing reference to the fourth application paragraph in its closing argument. After defense counsel's closing argument, the State reasserted that Timotheo and his brother were on a mission. The stronger evidence, and the theory principally relied upon by

the State, was the law of parties. It is likely that was the stronger point with the jury as well.

### VERDICT BY LESS THAN TWELVE JURORS

In his fourth point of error, Timotheo complains that the trial court erred in excusing one of the jurors during the punishment phase of the trial, resulting in a verdict being rendered by less than twelve jurors. The State responds that the exclusion of the juror was harmless.

The juror in question, Alejandro Santos, was excused by the trial court after he disclosed to the other members of the jury that family members of Timotheo, some of whom were witnesses at trial, went to his house and asked how the trial was going. The foreman reported this to the trial judge. Both the foreman and Santos were questioned. The foreman stated that Santos informed the jury that he told the family members that he could not discuss the trial with them, but told them the jury would do its best. The foreman stated that he did not get the impression that Santos was indicating that the jury would do the best it could in favor of Timotheo. The foreman also stated that other members of the jury were concerned for the position in which Santos had been placed and were concerned that Timotheo's family would hold Santos accountable for what happened. The foreman stated that Santos indicated that he did not feel that was a problem. Santos testified that the family members drove to his house, and asked how the court was doing. Santos told them that he was not allowed to talk about it, and they told him to do his best. Santos stated that knowing these people made him uncomfortable since the beginning, which is the reason he earlier told the court that he knew one of the witnesses. No questions were asked during voir dire that would have led to the disclosure of any relationships between the potential jurors and the witnesses, but Santos volunteered the information after the jury was seated and the witness he knew was called.

Santos stated that he was even more uncomfortable because he was going to have to tell the family members the verdict. Santos further stated, however, that he did not feel under pressure.

The court excused Santos and continued with eleven jurors, over the objection of the defense.

The Texas Constitution requires a jury in a felony criminal trial to be composed of twelve members. TEX. CONST. art. V, § 13. The Texas Constitution further provides, however, that "[w]hen, pending the trial of any case, one or more jurors not exceeding three, may die or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict." *Id.* Article 36.29 of the Texas Code of Criminal Procedure tracks the language of the Constitution and provides that "[n]ot less than twelve jurors can render and return a verdict in a felony case." TEX.CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp.1999). However, the legislature has limited the number of jurors who can be excused due to death or disability during the pendency of a trial in a felony case to one. *Id.*

▬▬▬. A juror is disabled only when the juror is physically, emotionally or mentally impaired in some way which hinders his ability to perform his duty as a juror. *See Brooks v. State*, 990 S.W.2d 278, 286 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999). The determination as to whether a juror is disabled is within the discretion of the trial court. *See id.* Absent an abuse of that discretion, no reversible error will be found. *See id.*

▬▬▬ In this case, the State agrees the juror was not disabled but contends the trial court's error in excusing the juror was not harmful. The juror testified he was uncomfortable but he did not feel pressured. We agree with Timotheo and

the State that the trial court erred in excusing Santos because he was not disabled.

The State relies on *Carranza v. State*, to support its assertion that the trial court's error was non-constitutional in nature. 980 S.W.2d 653 (Tex.Crim.App.1998). *Carranza* involved a trial court's error in failing to give the statutory admonishments under article 26.13. *See generally id.* The Court of Criminal Appeals held that the error in that case was non-constitutional because the admonishments were not constitutionally required. *See id.* at 656. Unlike *Carranza*, the Texas Constitution requires that a jury be composed of twelve members unless a member is excused for death or disability. *See* TEX. CONST. art. V, § 13.

■ The State also relies on the Texas Court of Criminal Appeal's decision in *Hatch v. State*, 958 S.W.2d 813 (Tex.Crim. App.1997), as support for its contention that the right to a jury of twelve members is statutory in nature. However, the issue in *Hatch* was whether the right to a jury of twelve members can be waived. 958 S.W.2d at 814. Both constitutional and statutory rights can be waived. *See Smith v. State*, 721 S.W.2d 844, 855 (Tex.Crim. App.1986); *Fain v. State*, 986 S.W.2d 666, 673–74 & n. 10 (Tex.App.—Austin 1998, pet. ref'd). The mere reference to the right to a twelve-member jury as a statutory right for purposes of determining whether the right can be waived does not equate to a holding that the right is purely statutory. Since both constitutional and statutory rights can be waived, the Court's holding would have been the same regardless of whether the right was considered constitutional or statutory. We disagree that the manner in which the issue was framed in *Hatch* can provide the basis for holding that the right to a twelve-member jury is purely statutory.

The State also refers us to the Houston court's decision in *Hegar v. State*, 11 S.W.3d 290 (Tex.App.—Houston [1st Dist.] 1999, no pet. h.). In *Hegar*, a juror was properly disqualified. 11 S.W.3d at 292–93. The trial court erred, however, in replacing the disabled juror with the next available juror because the jury had already been sworn and the remainder of the venire had been released. *Id.* at 292–95. In evaluating the harm, the Houston court viewed the error as one of jury selection. *Id.* at 294–95.

The *Hegar* case does not involve the same error that is present in this case. In *Hegar*, the trial court properly excused a juror; therefore, it did not violate the constitutional requirement that a juror only be excused for a disability. In addition, twelve jurors were present on the jury, unlike our case, even though the selection of the twelfth juror was erroneous.

The State's final argument is that because the Constitution allows the legislature to alter the twelve-member requirement, the right has become statutory even in the absence of altering legislation. We disagree. As currently written, article 36.29 implements the constitutional requirement that twelve members sit on a jury. Article 36.29 does not alter the constitutional nature of that right. Since we conclude that the right to a twelve member jury is constitutional, we must reverse the punishment verdict unless we are able to determine beyond a reasonable doubt that the error did not contribute to the punishment. *See* TEX.R.APP. P. 44.2(a).

The jury in this case assessed the maximum sentence. By improperly excusing one juror, the trial court lessened the burden on the State. Instead of having to convince twelve jurors that the maximum sentence was appropriate, the State was only required to convince eleven. We cannot speculate as to how a twelfth juror would have voted or how that juror could have otherwise influenced the jury's verdict. Santos was excused because Timotheo's family members had contacted him. Some of the jurors had expressed concern for Santos's safety. Under these circumstances, we cannot conclude beyond a rea-

sonable doubt that the trial court's decision to excuse Santos did not contribute to the jury's assessment of the maximum sentence.

### CONCLUSION

Because the trial court committed reversible error in excusing a juror who was not disabled, and permitting a jury of only eleven members to decide punishment, we reverse the trial court's judgment as to punishment. The cause is remanded to the trial court for a new punishment hearing.