# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00053-CR

**Garland Scroggins, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. 3012305, HONORABLE BOB PERKINS, JUDGE PRESIDING

Eleven jurors found appellant Garland Scroggins guilty of the offense of aggravated assault with the use of a deadly weapon. *See* Tex. Pen. Code Ann. ' 22.02(a)(2) (West 1994). The indictment also alleged that appellant had four previous felony convictions, which the jury found to be true. The jury assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and the trial court rendered judgment on the verdict. Appellant raises three issues on appeal. First, appellant asks that his conviction be reversed because the district court abused its discretion by dismissing a juror and allowing appellant to be convicted by eleven jurors. In his two remaining issues, appellant contends that the case should be remanded to the district court for a new punishment hearing because the district court erred: (1) in admitting into evidence a pen packet which contained no evidence that appellant

had waived indictment leading to the conviction; and (2) in admitting evidence of two previous felony convictions that were not Asufficiently linked@ to appellant. We will affirm the judgment of the district court.

## BACKGROUND

The State indicted appellant for aggravated assault, a second degree felony offense. The guilt-innocence phase of the trial began on November 27, 2001. On that day, five of the State=s witnesses testified. By the next morning, the State had not yet concluded its case in chief. Before the proceedings were under way, the district court reconvened outside the presence of the jury and announced that one of the jurors (herein ABull@) had Acalled in sick@ with the flu:

> [F]irst his girlfriend called in and said that he had the flue (sic) and he wasn=t going to be able to be here. Then I had my court coordinator call his house and she spoke with him. And he said that he had awakened at 4:00 or 4:30 this morning and C with aching joints and also with 101 degree fever and he just started taking his flu medicine and he=s in bed right now. And his C he=s got a sore throat. And so he says he=s C and he said he can go and get a doctor=s letter if we need it.

The district court then expressed his belief that Bull was disabled, and that the trial would Aproceed with the balance of the jurors.@

Appellant took the position that to proceed without the twelfth juror, there had to be a disability based on Amore of a showing than some guy calling saying he has the flu . . . .@ The district court acknowledged that one of the jurors had the previous day overheard Bull talking on his cellular phone about Adelivering a keg or getting a keg for last night or something.@ Nonetheless, the district court concluded that, even if Bull had been drinking beer the night before, that fact does not prove that he was not ill with influenza

as he reported.  The district court concluded that, regardless of the reason, the juror had become disabled.

Appellant objected to this determination, and further objected on constitutional grounds that proceeding

with a jury of eleven Adilutes the State=s burden of proof and that it=s denying us due process . . . .@ The

district court overruled all of appellant=s objections and continued the guilt-innocence phase of the trial.

After receiving further evidence from the State and from appellant, the jury found appellant

guilty of aggravated assault with the use of a deadly weapon.  The punishment phase began the next day.

The indictment contained two enhancement paragraphs.  The first alleged that appellant had been convicted

of the felony offenses of unauthorized use of a motor vehicle, *see* Tex. Pen. Code Ann. ' 31.07(a) (West

1994), and aggravated assault with serious bodily injury, *see* Tex. Pen. Code Ann. ' 22.02(a)(1) (West

1994).  The second enhancement paragraph alleged that appellant had been convicted of the offense of

possession of a controlled substance, namely cocaine, *see* Tex. Health & Safety Code Ann. ' 481.112

(West Supp. 2001), and of the offense of attempted murder, *see generally* Tex. Pen. Code Ann. ' 15.01

(West 1994).

Appellant was charged by information for the possession offense, a second degree felony,

and allegedly pleaded guilty to the charge.  During the punishment phase below, appellant objected to the

admission of State=s Exhibit Four, the pen packet for the possession conviction, because it contained no

signed waiver of indictment and there was no finding in the judgment that appellant had waived indictment.

The district court overruled this objection.  After the State rested on its punishment case, appellant moved

to strike the exhibit Aon that judgment where the information is.  I would like to further point out that the

Court didn=t have jurisdiction to enter that judgment.@ The court overruled appellant=s motion.

3

In relation to State's Exhibit Three, appellant objected to the admission of the fingerprint cards contained in the pen packet relating to the convictions from the unauthorized use of a motor vehicle and aggravated assault:

> [T]hose fingerprint cards are just stuck in there and they don't refer—they don't say where they came from, they don't hardly—they don't refer to cause numbers, they don't refer to anything. They just say here. And I don't think that it's sufficient for them to not tie them in to those what—they're alleging is prior convictions. And I would object to the fingerprint cards being included.

The State responded that the fingerprint cards were part of the same pen packet, and that they adequately connected appellant to the convictions. The district court overruled appellant's objection. After hearing evidence, the jury found all of the enhancement allegations to be true and assessed punishment at imprisonment for life. This appeal followed.

## DISCUSSION

*Juror Disability*

In his first issue, appellant contends that the district court erred by determining that the juror was disabled and then allowing appellant to be convicted and punished by a jury consisting of only eleven jurors. Appellant asks this Court to reverse the conviction because we cannot determine beyond a reasonable doubt that the district court's constitutional error did not contribute to the conviction and punishment. *See* Tex. R. App. P. 44.2(a); *see also Rivera v. State*, 12 S.W.3d 572, 579-80 (Tex. App.—San Antonio 2000, no pet.) (concluding that the right to a twelve member jury is constitutional,

4

therefore reversing because of appellate court=s inability to Aspeculate as to how a twelfth juror would have voted or how that juror would have otherwise influenced the jury=s verdict.@).

The Texas Constitution requires a jury in a felony criminal trial to be composed of twelve members. Tex. Const. art. V, ' 13. It further provides, however, that:

> When, pending the trial of any case, one or more jurors not exceeding three, may die or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict.

*Id*. Article 36.29 of the Texas Code of Criminal Procedure tracks the language of the Constitution and provides that Aafter the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict.@ Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2003). Only one juror can be excused due to death or disability during the pendency of a trial in a felony case. *Id.* A juror is disabled when the juror is physically, emotionally, or mentally impaired in some way which hinders the juror=s ability to perform the duty of a juror. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 956 (1999). The determination as to whether a juror is disabled is within the discretion of the trial court. *Id*. Absent an abuse of that discretion, no reversible error will be found. *Id*.

In a criminal case, an appellate court may reverse a trial court=s decision for an abuse of discretion only when it appears that the court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court=s conclusion under the correct law and the facts viewed in

5

the light most favorable to its legal conclusion. *Dubose v. State*, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Even if the appellate court would have reached a different result, it should not intercede as long as the trial court=s ruling was within the Azone of reasonable disagreement.@ *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g). The district court abuses its discretion when it arbitrarily or unreasonably excuses a juror, Awithout reference to any guiding rules and principles.@ *Gregg v. State*, 881 S.W.2d 946, 950-51 (Tex. App.CCorpus Christi 1994, pet. ref=d).

Appellant complains that the district court abused its discretion by Aallowing the trial to continue with only eleven jurors without confirmation that Juror Bull was, in fact, disabled.@ We disagree. Although there must be some showing of illness or disability, the legal standard by which a trial court determines that a juror has become disabled does not require that the trial court obtain a particular type of reliable proof or independent verification of the disability. As this Court has stated, Athe Legislature intended that the decision to continue the trial before eleven jurors be a matter resting in the sound discretion of the trial judge, as is his determination of whether a juror=s disability is sufficient to prevent his sitting in the case.@ *Campbell v. State*, 644 S.W.2d 154, 162 (Tex. App.CAustin 1982), *pet. ref=d*, 647 S.W.2d 660 (Tex. Crim. App. 1983) (per curiam). As the State points out in its brief, the cases in which a juror has been determined disabled due to physical impairment do not *require* Athe trial court to obtain the opinion of a medical expert or any other particular type of >reliable proof= before determining that a juror is disabled.@

In *Allen v. State*, a case in which a doctor=s note was offered into evidence, the trial court=s decision to excuse a juror Abased on his condition and the physical well-being of the other jurors@ was held

6

not an abuse of discretion A[u]nder the circumstances presented.@ 536 S.W.2d 364, 366-67 (Tex. Crim. App. 1976). In *Hughes v. State*, the trial court=s conclusion that the juror was disabled was Asupported by the facts.@ 787 S.W.2d 193, 195 (Tex. App.CCorpus Christi 1990, pet. ref=d). There, the trial court observed the juror=s signs of illness while listening to a witness=s testimonyCher eyes were closed, her head was propped up by her hand, and she looked as if she were Ain distress.@ *Id*. In *Quintanilla v. State*, the trial court=s decision to excuse a juror on the grounds that her husband had become ill the evening before was not an abuse of discretion because Athe trial court was able to observe [the juror=s] attitude and demeanor, and could reasonably have determined that [she] was too distracted by her husband=s need for medical care to effectively perform her obligations as a juror.@ 40 S.W.3d 576, 581 (Tex. App.CSan Antonio 2001, pet. ref=d). In each of these cases, the appellate court was satisfied that the trial court excused the juror based on some evidence, so that the determination of disability was not arbitrary or unreasonable. Although the district court in this case did not obtain a doctor=s verification of Bull=s illness or speak to or observe the juror, we cannot say that the district court made its decision unreasonably and without some factual support. The district court directed the court coordinator to call and speak directly with Bull, who described in detail his symptoms and ailments.[1] Bull told the court coordinator that, if needed, he would obtain a doctor=s note. Counsel for the State told the district court that on the previous day Bull Atwice put his head down on the . . . railing as if he was not feeling well.@ The district court expressed concern for the other jurors and for judicial economy: AWell, if he=s got 101 fever, I don=t want

---

[1] The State=s brief correctly observes that Aappellant did not, in any way, specifically object on the basis that the juror did not communicate *directly* with the judge. Nor does the appellant expressly make that argument in his brief.@

7

him down here to infect the other jurors. He says he=s got one. He=s still at home . . . I=m not going to send a doctor out there to see if he=s lying or not.@

Appellant=s arguments at trial and on appeal suggest that he believes that Bull was simply physically ill from alcohol consumption and the fact that Bull did not first go to the doctor and obtain a note proving the actual cause of his illness makes him an Airresponsible@ juror. The district court did not altogether discount the possibility that Bull=s condition flowed from drinking the night before, but stated nonetheless that although the court could not know Awhat he=s disabled from . . . I am convinced that he is disabled.@ The question on appeal is limited to whether the district court had some guiding basis for determining that Bull=s physical ailments met the statutory requirement of Adisability.@ Although the court could have reached a different conclusion, we hold that the district court=s ruling falls within the Azone of reasonable disagreement.@ *Montgomery*, 810 S.W.2d at 391. The district court=s decision to continue the trial with eleven jurors because Bull suffered from a physical illness that would hinder him from performing the duties of a juror did not amount to an abuse of discretion. On the contrary, once the district court determined the juror was disabled, it was required to continue the trial. *See Hill v. State*, No. 1385-01, slip op. at 13-14, 2002 Tex. Crim. App. LEXIS 213, at *19-20 (Tex. Crim. App. Nov. 6, 2002); *Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. 1980). We overrule appellant=s first issue.

### *Waiver of Indictment*

Appellant contends in his second issue that the judgment for the second conviction alleged for enhancement shows on its face that he had been charged only by information with the felony of cocaine

8

possession without showing that he had waived his right to indictment.[2] Therefore, appellant maintains, the district court erred in admitting the pen packet and allowing the jury to find that enhancement to be true. We disagree. It is true that the record must reflect a waiver of indictment in order for a felony conviction to withstand an appellate challenge. *See Lackey v. State*, 574 S.W.2d 97, 100 (Tex. Crim. App. 1978). However, this rule applies only where the conviction under attack is on direct appeal. *See Acosta v. State*, 650 S.W.2d 827, 828 (Tex. Crim. App. 1983). Here, appellant attempts a collateral attack on the judgment in a previous conviction, alleged for enhancement, which cannot be raised for the first time in this appeal. *Id*. at 828-29.

It is the State=s burden to introduce properly authenticated copies of the defendant=s prior convictions for enhancement purposes. Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1) (West Supp. 2003). There is no requirement that a judgment reflect the waiver of indictment if conviction is upon

---

[2] Appellant correctly states that in Texas, a felony conviction cannot be had on information in the absence of a waiver. Article 1, section 10 of the Texas Constitution states in part that Ano person shall be held to answer for a criminal offense, unless on an indictment of a grand jury . . . .@ Tex. Const. art. I, ' 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.05 (West 1977). Article 1.141 of the Code of Criminal Procedure provides: AA person represented by legal counsel may in open court or by written instrument voluntarily waive the right to be accused by indictment of any offense other than a capital felony. On waiver as provided in this article, the accused shall be charged by information.@ Tex. Code Crim. Proc. Ann. art. 1.141 (West 1977).

information.  *Acosta*, 650 S.W.2d at 828.  As noted in *Smith v. State*, Aalthough . . . the better practice would have been for the State to have shown a waiver by appellant . . . such proof is not required by the State, and no reversible error will result from a lack thereof.@  683 S.W.2d 393, 406 (Tex. Crim. App. 1984).  In this case, the State met its burden.  Appellant=s prior conviction used for enhancement was sufficiently proven when the State introduced a properly certified pen packet containing the judgment, the sentence, and fingerprints which were connected to appellant.

In the context of a collateral attack on a prior conviction, once the State makes a *prima facie* showing that the judgment and resulting sentence are regular on their faces, we presume regularity in the judgment.  *See Johnson v. State*, 725 S.W.2d 245, 247 (Tex. Crim. App. 1987); *see also Acosta*, 650 S.W.2d at 833 (Onion, P.J., concurring) (AThere is also a presumption of regularity of the judgment.@)  Here, the presumption of regularity was further supported, to some degree, by the fact that the pen packet reflects that appellant pleaded guilty to an information which stated that Athe defendant, Garland W. Scroggins, represented by counsel, voluntarily waived the right to be accused by indictment of an offense other than a capital felony . . . .@  The burden thus shifted to the defendant to prove that the prior conviction is void.  *Acosta*, 650 S.W.2d at 829; *Smith*, 683 S.W.2d at 407.  Appellant failed to introduce any evidence or make an affirmative showing that the prior conviction was void.  Accordingly, we hold that the district court properly overruled appellant=s objection and motion to strike and therefore overrule appellant=s second issue.

*Fingerprint Cards*

In his third issue, appellant complains that the district court Aerred in admitting irrelevant evidence of two felony convictions@ which Awere not sufficiently linked@ to him.  He argues that the unattached fingerprint cards Adid not contain information as to where the card came from and did not list cause numbers to connect the fingerprints to the causes in the [pen] packet,@ and, therefore, there was insufficient evidence to link him to the convictions for unauthorized use of a motor vehicle and aggravated assault.  A trial court=s decision to admit evidence is reviewed under an abuse of discretion standard, and we will not reverse the district court=s ruling unless we determine it falls outside the zone of reasonable disagreement.  *See Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

The State has the burden of proof beyond a reasonable doubt to show the prior convictions were final under the law and that appellant was the person previously convicted of those offenses.  *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *see also Rios v. State*, 557 S.W.2d 87, 92 (Tex. Crim. App. 1977).  The court of criminal appeals has held that there is no exclusive manner of proving a defendant=s identity as to prior felonies used for enhancement, and that each case is to be judged on its own individual merits.  *Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1987) (op. on reh=g). One means of proving identity for purposes of enhancement includes the introduction of certified copies of the judgment, sentence, and record of the Texas Department of Corrections or a county jail, including fingerprint records of the person convicted, supported by expert testimony identifying them as identical with known prints of the accused.  *Id*. at 31.  Here, in order to meet its burden of identifying appellant as the same person who had been previously convicted in the pen packet labeled Exhibit Three, the State used the

11

orthodox method of offering the testimony of a fingerprint specialist who compared and identified the prints

in the unattached fingerprint cards with appellant=s known prints.[3]

---

[3] The State called fingerprint specialist, Manuel Villanueva, whose testimony in part was as follows:

Q:  Now, again showing you State=s Exhibit No. 5 that you identified as the fingerprint card taken from the defendant, did you do a comparison with that fingerprint card, the known prints of the defendant against the fingerprints located in State=s Exhibit No. 3 and State=s Exhibit No. 4?

A:  At the request of the prosecutor, I compared the known prints of the defendant to the prints of the defendant to the prints on this pen pack.  You can see by my signature here and here that I looked at both of them.  And after thorough examination, I determined they=re both one and the same.

Q:  And did you also do the same for State=s Exhibit No. 3?

A:  Again, the printsCthe known prints are compared to these prints here.  And you can see by my initials that I=ve looked at both of them.  And after a thorough examination, I determined they were both one and the same.

Appellant objected to the admission of the pen packet because the fingerprint cards were not Aattached@ and were Ajust stuck in there.@ Appellant therefore directed his trial objection toward the conditional relevance of the pen packet. *See Rosales v. State*, 867 S.W.2d 70, 72 (Tex. App.CEl Paso 1993, no pet.) (stating that question of whether prior conviction has been sufficiently linked to defendant is procedural and primarily one of conditional relevancy). When an authenticated copy of a pen packet is offered into evidence in an effort to prove a prior conviction, however, it is not essential that the supporting evidence as to identification precede its admission. *Yeager v. State*, 737 S.W.2d 948, 951 (Tex. App.CFort Worth 1987, no pet.) (citing *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986)). Appellant does not direct us to any supporting authority for his contention, nor can we find any support for the proposition that the fingerprint card must be stapled or otherwise attached to documents in the pen packet in order to be admissible. Thus, we cannot say that the district court abused its discretion in admitting the pen packet with unattached fingerprint cards, which was conditionally relevant at the time. *See Torres*, 71 S.W.3d at 760.

Furthermore, penitentiary documents are self-proving; thus, no sponsoring witness was needed as to the fingerprint cards because the proper attestation and certificate are attached to the judgment and sentence relating to appellant=s prior conviction. *See Yeager*, 737 S.W.2d at 950. If, after all proof on the fact in question has been received, the evidence does not support a rational finding that the defendant is the same person as the one previously convicted, the fact finder should not be allowed to consider evidence of the previous conviction. *See Rosales*, 867 S.W.2d at 73 (citing *Fuller v. State*, 829 S.W.2d 191, 197 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 941 (1993)). In that situation, a motion to strike must be

13

urged and granted to withdraw the evidence from consideration. *Id*. Otherwise, any objection to the evidence is waived. *See Fuller*, 829 S.W.2d at 198-99. Here, the relevance of the pen packet was conditioned upon the introduction of evidence sufficient to support a finding that appellant is the same person as the one previously convicted. *See Beck*, 719 S.W.2d at 210-11. After all the evidence was admitted, appellant never moved to strike the exhibit. The State argues that appellant thereby waived this complaint. We agree.

In any event, although appellant never moved to strike the pen packet due to the loose fingerprint cards, even if the fingerprint evidence was deficient, the entire pen packet would not thereby become inadmissible. *See Pachecano v. State*, 881 S.W.2d 537, 545 (Tex. App.CFort Worth 1994, no pet.). The remainder of the pen packet sufficiently identifies appellant as the person previously convicted of the felony offenses. In addition to the testimony of the fingerprint expert, the pen packet contained photographs of the person convicted and was passed around for the jury members to see and examine. The pen packet that appellant claims is insufficiently linked to him contains two photos of a person named Garland W. Scroggins. Thus, even if the person convicted in State=s Exhibit Three was not proven to be appellant through the use of fingerprints, because the person convicted in State=s Exhibit Four was proven to be appellant through the use of fingerprints, the jury had the capability to compare the photographs contained in the two exhibits and reach the conclusion that the photographs depicted the individual on trial, the appellant. *See Littles v. State*, 726 S.W.2d 26, 31 (Tex. Crim. App. 1987) (op. on reh=g). We overrule appellant=s third issue.

**CONCLUSION**

14

Because we overrule all of appellant=s issues, we affirm the judgment of the district court.


_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed:   December 5, 2002

Do Not Publish

15