

Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

## MEMORANDUM OPINION

No. 04-07-00446-CR

Alejandro Carbajal **GARZA** Jr.,
Appellant

v.

**STATE** of Texas,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 06-07-11915-CR
Honorable Richard C. Terrell, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:     February 25, 2009

AFFIRMED

A jury found Alejandro Carbajal Garza Jr. guilty of murdering Javier Sanchez in the course of committing or attempting to commit a kidnapping. Garza was sentenced to life imprisonment without parole. Garza appeals his capital murder conviction in four issues. We affirm.

## I. BACKGROUND

On the morning of January 2, 2006, Sanchez's body was found on a roadside near the reservoir in Alice, Texas. Sanchez had been shot five times. Garza was charged with Sanchez's murder and pled not guilty.

At trial, accomplice witness James Michael Dennis testified against Garza. According to Dennis, Sanchez was staying at his sister's house in Alice on January 1, 2006. Dennis heard Sanchez was "looking to score a little bit of cocaine." Between 9:00 and 10:00 p.m., Dennis went to Sanchez's sister's house, woke Sanchez up, and offered him some cocaine. Later that evening, Dennis and Sanchez met Garza twice at the Astromatic Car Wash on U.S. Highway 281 and bought cocaine from him. At the second meeting, Garza was joined by Alfred "Casper" Gonzales and Alonzo "Lowrider" Gonzalez. When Dennis called Garza a third time to arrange to buy more cocaine, Garza told Dennis and Sanchez to meet him at a more remote location, the Richardson Water Well. Dennis and Sanchez went to the well and waited for about fifteen minutes, but Garza did not show up.

While Dennis and Sanchez were driving back from the well toward town, a gold Expedition pulled out in front of Dennis's car causing him to come to a stop. A black truck then pulled up behind Dennis's car, trapping it. Garza, Casper, Lowrider, and another man identified only as Dito, exited the two vehicles holding guns. Garza, Casper, and Lowrider pulled Sanchez from the passenger seat. Dennis saw Garza had a silver gun in his hand "it may have been a 9, a .45, something in that – that  area." Garza held open the rear passenger door to the first vehicle, while Lowrider grabbed Sanchez and tried to push him into the vehicle. Dennis then heard what "could

have been a small caliber handgun pop," saw Sanchez's body "buckle back," and saw Lowrider push him into the backseat of the Expedition. Dennis was left alone in his car.

Dennis further testified that after Sanchez was taken, he went to Garza's home to buy more cocaine. Between 2:00 and 3:00 a.m., he saw Garza on his cell phone and heard him say "Bro, we took care of our business." He also heard Lowrider say he "iced that fool, three to the dome," which according to Dennis meant that "he killed him" with "three shots to the head."

Dennis testified he ran into Garza and his lawyer the next day. Garza told Dennis he had just been to the sheriff's office, but that he didn't tell the sheriff anything about Sanchez. Garza also said that if Dennis knew what was good for him, he wouldn't say anything either.

Dennis also acknowledged he gave numerous statements to police about Sanchez's kidnapping and murder. In one of these statements, Dennis told police that after Sanchez was taken, he followed the Expedition to the reservoir, where he saw Garza, Lowrider, and Casper shoot Sanchez. At trial, Dennis said this part of his statement was untrue.

In closing arguments, the State argued Sanchez was first abducted and later fatally shot, and Garza aided and assisted in the kidnapping and murder. The State further argued Garza was directed to kill Sanchez by Mexican Mafia gang leader, Oliver Gonzalez. The jury was charged that it could convict Garza under the law of parties. The jury returned a guilty verdict, and Garza was automatically sentenced to life imprisonment as required by law. *See* TEX. PEN. CODE ANN. § 12.31(a) (Vernon 2003).

## II. ACCOMPLICE WITNESS CORROBORATION/COMPLICITY AS A PARTY

In his third issue, Garza argues the evidence was legally insufficient to support his conviction because the State failed to provide independent corroboration of Dennis's testimony, and the evidence did not establish his complicity as a party. Dennis, who was also indicted for Sanchez's murder, was an accomplice witness as a matter of law. *See Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CRIM. PROC. CODE ANN. art. 38.14 (Vernon 2005). However, it is not necessary for the corroborating evidence to directly connect the defendant to the crime. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). Nor is it necessary for the corroborating evidence to be sufficient in itself to establish guilt beyond a reasonable doubt. *Id.* "There must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (emphasis in original). To determine if there is sufficient corroborating evidence, an appellate court eliminates the accomplice testimony from consideration and then examines the rest of the record to see if there is evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).

In this case, other evidence admitted at trial tended to corroborate Dennis's testimony. Two other witnesses, Priscilla Salinas and Christy Ann Cantu, testified about Garza's actions on the night Sanchez was killed. Priscilla Salinas testified she was at Garza's house from about 8:30 p.m. on

January 1, 2006, until the early morning on January 2, 2006. According to Salinas, Garza received several phone calls on his cell phone on January 1, 2006. Garza left his house between 10:40 and 11:30 p.m. with Casper and Lowrider, and Salinas saw that he had a silver gun sticking out of the top of his pants near his stomach. Salinas further testified that Garza came home around 2:00 a.m. on January 2, 2006, along with Casper and Lowrider in a gold Expedition. About a month later, Garza told Salinas that if anyone asked her where he was on the night Sanchez was killed, she should say that he never left his house.

Christy Ann Cantu, Oliver Gonzalez's fiancé, also testified. According to Cantu, she was at home in Beeville with Gonzalez on January 1 and 2, 2006, and she overheard two cell phone conversations between Gonzalez and Garza. Cantu said she could hear both Gonzalez and Garza talking because Gonzalez was using the speaker option on his cell phone. In the first conversation, which took place on January 1, 2006, Garza told Gonzalez that Sanchez had been bad-mouthing Gonzalez. Cantu said when she heard this she knew something bad was going to happen to Sanchez, but she didn't realize it would be as bad as it turned out to be. In the second conversation, which took place between 2:00 and 2:30 a.m. on January 2, 2006, Cantu heard Garza tell Gonzalez that they had "done the thing" and that Sanchez had "looked up at the sky before he had gotten shot." Garza's cell phone records were also admitted into evidence, and these records support Cantu's testimony about the calls between Garza and Gonzalez.

Based on the testimony of Salinas and Cantu, the State presented sufficient non-accomplice corroborating evidence tending to connect Garza with Sanchez's kidnapping and murder.

Garza also contends the evidence was legally insufficient to support his complicity as a party. We disagree. "A person is criminally responsible for an offense committed by the conduct of another if [] acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003). "Evidence is sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996). Direct evidence of complicity is not necessary; the State may use circumstantial evidence to prove the defendant's responsibility as a party to the offense. *Rivera v. State*, 12 S.W.3d 572, 575 (Tex. App.—San Antonio 2000, no pet.). In considering whether the accused participated as a party, the court may look to events that occurred before, during, or after the offense was committed. *Lively v. State*, 940 S.W.2d 380, 383 (Tex. App.—San Antonio 1997), *aff'd*, 968 S.W.2d 363 (Tex. Crim. App. 1998). Based on the testimony of Dennis, Salinas, and Cantu, there was sufficient evidence for a rational trier of fact to have found Garza was guilty as a party to Sanchez's kidnapping and murder. Issue three is overruled.

### III. TRIAL JUDGE'S REMARKS

In his first issue on appeal, Garza contends the trial judge abused his discretion and exhibited bias against him by making certain remarks and by admonishing defense counsel in front of the jury in violation of the federal and state constitutions and Article 38.05 of the Texas Code of Criminal Procedure. In response, the State argues the trial judge acted within his discretion in making remarks

to expedite and maintain control of the trial. Additionally, the State argues the trial judge's admonishments of defense counsel did not indicate the trial judge's views about the case.

A trial judge must refrain from making any remark calculated to convey to the jury his opinion of the case. *See* TEX. CRIM. PROC. CODE ANN. art. 38.05 (Vernon 1979). Article 38.05 of the Texas Code of Criminal Procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; *nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.*

*Id*. (emphasis added).

Nevertheless, a trial judge has broad discretion in maintaining control and expediting trial. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). A trial judge may interject to correct a misstatement or misrepresentation of previously admitted testimony, and may impose reasonable limitations on the examination of witnesses. *Id*. Even a trial judge's irritation at defense counsel does not "translate to an indication as to the judge's views about the defendant's guilt or innocence." *Id*. Absent a clear showing of bias, a trial judge's actions are assumed to have been correct. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

Generally, a party's failure to timely and specifically object to a trial judge's remarks waives any error. *Resendez v. State*, 160 S.W.3d 181, 189-90 (Tex. App.—Corpus Christi 2005, no pet.); TEX. R. APP. P. 33.1(a). In *Blue v. State*, however, a plurality of the Texas Court of Criminal Appeals held an objection was unnecessary to preserve a complaint about a trial judge's remarks

that tainted the presumption of innocence in front of the venire and constituted fundamental error of constitutional dimension. 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.).

In this case, Garza complains of the following remarks: "Counsel, that's an improper question. I will not allow it;" "Counsel, you asked that question more than once. Let's keep going;" "That's not much of an objection, and it's overruled;" "Excuse me, Counsel. Let's not cover the same territory. You got some new territory, that's fine;" "Counsel–counsel–counsel, you deal with convictions here;" and "Excuse me, Counsel. The term is 'reasonable doubt.'"

These remarks did not rise to the level of fundamental error of constitutional dimension and, thus, timely and specific objections were required to preserve any complaint for appellate review. Garza failed to object, thereby waiving this complaint. *See Resendez*, 160 S.W.3d at 189-90; TEX. R. APP. P. 33.1(a). But even if Garza had properly objected at trial, we would overrule this issue. The record does not clearly show bias on the part of the trial judge. None of the challenged remarks were calculated to convey to the jury the trial judge's opinion of the case. To the contrary, most of the remarks were made to control or expedite the trial, or to correct misstatements of the law. Issue one is therefore overruled.

## IV. PROSECUTORIAL MISCONDUCT

In his second issue, Garza argues the State violated his due process rights when it engaged in prosecutorial misconduct by (1) using coerced witness statements and creating a false impression at trial, (2) violating the trial court's limine orders, (3) not disclosing a witness "potentially" favorable to the defense, and (4) making an improper jury argument.

An appellate court reviews claims of prosecutorial misconduct on a case by case basis. *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988). The review is not limited to only the facts of each case, but also the probable effect on juror's minds. *Hodge v. State*, 488 S.W.2d 779, 781-82 (Tex. Crim. App. 1973). Prosecutorial misconduct has been found where the prosecutor's actions deliberately violated an express court order and where the prosecutor's misconduct was so blatant as to border on being contumacious. *Stahl*, 749 S.W.2d at 831 (citing *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985)). Generally, a defendant is required to preserve a prosecutorial misconduct complaint by (1) making a timely and specific objection (2) requesting an instruction to disregard the matter improperly placed before the jury; and (3) moving for mistrial. *See Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *id.* (noting that in cases in which the Court of Criminal Appeals reversed for prosecutorial misconduct defendant had objected to prosecutor's conduct); TEX. R. APP. P. 33.1(a).

### A. Use of Coerced Statements and Creating a False Impression

Garza argues the prosecutor engaged in misconduct when he used Dennis's statements at trial because the statements were obtained by police coercion. Additionally, Garza argues the prosecutor created a false impression in front of the jury because he questioned Dennis about his two incarcerations in the Texas Department of Criminal Justice, but did not question him about incarcerations in other facilities. Garza did not object to this conduct at trial, and therefore, has not preserved this complaint for appellate review. *See Penry*, 903 S.W.2d at 764; *Stahl*, 749 S.W.2d at 831; TEX. R. APP. P. 33.1(a).

## *B. Violations of Limine Orders*

The trial court's limine orders required counsel to approach the bench before eliciting "extraneous crime or misconduct evidence" and "race or ethnicity evidence as it relate[d] to gang memberships." To support his argument that the prosecutor "frequently" violated the trial court's limine orders, Garza cites two examples of the prosecutor not approaching the bench prior to specific questioning.

In the first example, the prosecutor asked police officer Rex Ramon, who arrested Garza after he was indicted for Sanchez's murder, "How are you familiar with [the defendant]?" and "Did you have an occasion to see [the defendant] last summer?" The record shows the questions were asked at the beginning of Ramon's testimony, and all counsel approached the bench before the witness answered the questions. The record does not show a deliberate attempt by the prosecutor to elicit evidence of extraneous misconduct, or of race or ethnicity as it related to gang memberships, in violation of the limine orders; nor does it show conduct so blatant as to border on contumacious. Additionally, in light of the fact that defense counsel objected and counsel approached the bench, the prosecutor's conduct had no effect on the jury.

In the second example, the prosecutor asked another witness, Juan Manuel "Nini" Sanchez Jr., if Garza had any tattoos or became a member of the Mexican Mafia after Sanchez's murder. Notably, the record shows these questions were asked after defense counsel had already questioned police officer Enrique Saenz on the same issues, and Garza did not object to these questions at trial. Accordingly, nothing is preserved for appellate review. *See Penry*, 903 S.W.2d at 764; TEX. R. APP. P. 33.1(a).

### *C. Non-Disclosure of Witness "Potentially" Favorable to the Defense*

Garza next complains of the prosecutor's failure to disclose Rolando Rene Garza, a witness he characterizes as "potentially" favorable to his defense. Garza raised this complaint at the hearing on his motion for new trial and called Rolando as a witness. According to Rolando's testimony, he met with the prosecutor both before and after Garza's trial. At the meeting before Garza's trial, which Rolando said took place in April 2007, Rolando told the prosecutor that he was at a party on January 6, 2006, and he heard Lowrider and Casper say they had murdered Sanchez. At the meeting after Garza's trial, which Rolando said took place in August 2007, Rolando told the prosecutor he had heard Dennis bragging that he had murdered Sanchez. The trial court denied Garza's motion for new trial.

Suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83 (1963). A prosecutor's duty to reveal *Brady* material to the defense attaches when the information comes into the State's possession. *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). *Brady* does not require the prosecutor to disclose evidence favorable to the defendant that the State does not have in its possession and is not known to exist. *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990), *overruled on other grounds*, *Madden v. State*, 799 S.W.2d 683, 686 n.3 (Tex. Crim. App. 1990).

To establish a *Brady* violation, a defendant must satisfy three requirements: (1) the State failed to disclose evidence; (2) the withheld evidence is favorable to the defendant; and (3) the withheld evidence is material, that is, there was a reasonable probability that had the evidence been

disclosed to the defense, the outcome of the trial would have been different. *Webb v. State*, 232 S.W.3d 109, 114 (Tex. Crim. App. 2007); *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).

We review the trial court's denial of a motion for new trial for an abuse of discretion. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). When reviewing a trial court's denial of a motion for new trial, we do not substitute our judgment for that of the trial court, but rather, we consider whether the trial court's decision was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Thus, if there is conflicting evidence on an issue of fact, we defer to the trial court's credibility determination. *Id.*; *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

Here, the trial court was not required to believe Rolando's testimony that he met with the district attorney in April 2007 and told him about Casper's and Lowrider's comments at this meeting. In response to questioning from the trial court, the prosecutor acknowledged that he had met with Rolando several times; however, the prosecutor stated he did not recall meeting with Rolando in April 2007, and he believed all of his meetings with Rolando occurred after Garza's trial was completed. Thus, the trial court could have determined the evidence in question did not come into the State's possession until after Garza's trial was over and therefore no duty to disclose attached.

Additionally, the trial court could have concluded Garza did not establish Rolando's testimony was favorable to him and material. *See Webb*, 232 S.W.3d at 115 (quoting *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)) ("Under *Brady*, the defendant bears the burden

of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure."). In this case, Rolando testified he heard Lowrider and Casper admit to murdering Sanchez; he did not present evidence that Garza did not participate in murdering Sanchez. The State's theory at trial was that Garza, Lowrider, and Casper all participated in Sanchez's murder, and much of the evidence admitted at trial supported this theory. Thus, the trial court could have concluded that even if the defense had been told about Rolando, there was no reasonable probability that the result of the proceeding would have been different. *Id.* ("The mere possibility that an item of undisclosed evidence might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense."). Based on the record presented at the motion for new trial hearing, we conclude the trial court did not abuse its discretion in determining Garza did not establish a *Brady* violation.

### D. Improper Jury Argument

In closing argument, the prosecutor referred to evidence that Garza and his lawyer told Dennis he should "[k]eep his mouth shut" about Sanchez. Garza characterizes this prosecutorial misconduct complaint as an improper attack on Garza's defense counsel. Nevertheless, Garza made no such objection at trial. Thus, Garza's final prosecutorial misconduct complaint is not preserved for our review. *See* TEX. R. APP. P. 33.1(a); *Valencia v. State*, 946 S.W.2d 81, 82-83 (Tex. Crim. App. 1997) ("Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling.").

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, Garza alleges he received ineffective assistance of trial counsel because during voir dire, venire members were not asked questions about their ability to consider the full range of punishment, specific jury instructions were not requested, and certain objections to evidence and argument were not made. Garza raised an ineffective assistance of counsel claim in his motion for new trial, but offered no evidence in support of his claim. In response to this issue, the State argues the record is void of any showing that trial counsel's performance was deficient.

To prevail on a claim of ineffective assistance claim, a defendant must show that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1974)). To show deficient performance, the defendant must prove by a preponderance of the evidence that counsel's representation fell below the standard of professional norms. *Id.* To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* The burden to establish both requirements is on the defendant. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Appellate review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Id.* "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Garza*, 213 S.W.3d at 348. Additionally, an appellate court analyzes an ineffective assistance of counsel claim using

a totality of the representation standard. *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004). The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is entitled to errorless or perfect counsel." *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

Garza's primary argument focuses on trial counsel's failure to ask members of the venire if they could consider the full range of punishment. As the State points out in its briefing, however, the jury never made a punishment determination in this case. Garza was indicted for capital murder and the State did not pursue the death penalty. An instruction on a lesser included offense was not requested, and the jury was charged solely on the offense of capital murder. Under these circumstances, a finding of guilt carried with it an automatic sentence of life imprisonment without parole. *See* TEX. PEN. CODE ANN. § 12.31(a) (Vernon 2003). Thus, on this record, it appears it was unnecessary to question venire members on their ability to consider the full range of punishment.

Garza acknowledges this point, but nonetheless asserts trial counsel should have asked the venire members about their ability to consider the full range of punishment to reveal possible bias. As support for his assertion that trial counsel's performance was deficient in this regard, Garza cites *Walker v. State*, a case in which this court held the defendant was denied effective assistance of counsel based on the totality of the representation provided. 195 S.W.3d 250, 262-63 (Tex. App.—San Antonio 2006, no pet.). In *Walker*, we concluded that one aspect of trial counsel's deficient representation was his failure to ask members of the venire any questions, and in particular, any questions about possible bias. *Id*. at 256-57. Here, the record shows trial counsel conducted voir dire, asking the members of the venire a variety of questions, and some of these questions addressed possible bias. Thus, trial counsel's performance in the present case is readily distinguishable from trial counsel's deficient representation in *Walker*.

Garza's additional complaints address trial counsel's performance with respect to evidentiary matters and part of the State's closing argument. As to some of these complaints, Garza does not specify the objections that should have been made by trial counsel. As to other complaints, it is apparent that the evidence in question was non-objectionable, or that an instruction to disregard would have been unnecessary because the evidence was elicited outside of the presence of the jury. As to still other complaints, there is at least a possibility that trial counsel's conduct could have been part of a reasonable trial strategy.

Thus, Garza has not overcome the strong presumption of effective assistance of counsel, and has not made the required showing that trial counsel's representation fell below the standard of professional norms. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Issue four is overruled.

## VI. CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH