Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

Nos. 04-10-00123-CR; 04-10-00124-CR; 04-10-00125-CR

Abelardo Gerardo **GONZALEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court Nos. 2008CRR000657D1; 2008CRR000662D1; 2008CRR000665D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 31, 2011

AFFIRMED

A jury convicted Abelardo Gerardo Gonzalez of three counts of aggravated robbery and

three counts of engaging in organized criminal activity. Gonzalez was sentenced to thirty years'

imprisonment on each count and was ordered to serve these sentences concurrently. On appeal,

Gonzalez argues his convictions must be reversed because (1) the accomplice witness testimony

was not sufficiently corroborated; (2) the evidence was insufficient to support his convictions for

engaging in organized criminal activity because there was no evidence he participated in the

planning or carrying out of the robberies; (3) the trial court erred in denying his motion to suppress evidence; (4) he was deprived of a fair trial because of prosecutorial misconduct; (5) the trial court erred in admitting the out-of-court statements of a deceased co-defendant; (6) the trial court erred in refusing to declare a mistrial after a juror became disabled; and (7) the indictments failed to vest the trial court with jurisdiction over the offenses of engaging in organized criminal activity. We overrule all of Gonzalez's issues, and affirm the judgments of conviction.

## BACKGROUND

This case involves three robberies that occurred in Laredo, Texas, in the span of two months. On December 5, 2007, at about 10:00 p.m., a robbery took place at a restaurant called "The Glass Kitchen." A young man entered the restaurant, exhibited a handgun, and demanded money. On December 24, 2007, at about 7:00 a.m., two men wearing black ski masks entered Luby's Cafeteria through the back door, exhibited semi-automatic weapons, and directed the restaurant manager to open the safe. On January 23, 2008, at about 6:20 a.m., two men wearing black ski masks entered Taco Palenque Jr., exhibited handguns, and directed the manager to open the safe. In all three robberies, restaurant employees complied with the robbers' demands for money. In the Taco Palenque robbery, the money was placed in an International Bank of Commerce ("IBC") money bag.

A police investigation led to three indictments against Gonzalez. Each indictment charged Gonzalez with multiple counts of robbery and one count of engaging in organized criminal activity. Gonzalez pleaded not guilty, and was tried on all charges before a single jury. The State's theory at trial was that Gonzalez recruited other individuals to commit the robberies. According to this theory, Gonzalez planned the robberies; directed his recruits on how and when to commit the robberies; equipped his recruits with the vehicles, gloves, weapons, and ski masks

used in the robberies; and served as a lookout during the robberies. After each robbery, Gonzalez met with his recruits and split the proceeds with them.

At trial, the evidence showed David Lee Mendez participated in all three robberies. Mendez was joined by Vincent Hernandez in the Glass Kitchen robbery, and by Ricardo Camarillo in the Luby's and Taco Palenque robberies. Accomplice witnesses Hernandez and Camarillo testified that they met with Gonzalez and Mendez before the robberies; that Gonzalez drove them to an apartment complex to pick up the vehicles used in the robberies; that Gonzalez followed them to the restaurants immediately before the robberies; that Gonzalez told them he would serve as a lookout during the robberies; that they met with Gonzalez after the robberies; and that Gonzalez handed them their share of the robbery proceeds. Hernandez and Camarillo testified that Gonzalez was known to them as "Chief."

Mendez, who was also indicted for the robberies, died before trial. Mendez's common law wife, Erika Hinojosa, testified about statements Mendez had made to her about the Luby's robbery. According to Hinojosa, Mendez told her that he and Camarillo committed the Luby's robbery. Mendez also told Hinojosa other information about the Luby's robbery, including that Gonzalez planned the Luby's robbery, Gonzalez supplied the weapons used in the robbery, and Gonzalez waited for him in a truck during the robbery. Finally, Mendez told Hinojosa that Gonzalez's brother, Hipolito Gonzalez, worked at Luby's, knew how much cash would be in the safe on the day of the robbery, and left the back door of the restaurant open on the morning of the robbery.

Laredo police detective Roberto Garcia testified that about three weeks after the Taco Palenque robbery police officers obtained a warrant to search Gonzalez's residence. In searching Gonzalez's garage, police found various items, including two black ski masks, two 9-millimeter

pistols, a bag containing various types of ammunition, three cans of pepper spray, a BB gun, a green ski mask, and an IBC money bag.

The jury found Gonzalez guilty of three counts of aggravated robbery and three counts of engaging in organized criminal activity. Gonzalez appealed.

### ACCOMPLICE WITNESS CORROBORATION/SUFFICIENCY OF THE EVIDENCE

Gonzalez raises two distinct arguments in his first issue. Gonzalez argues both that the evidence was insufficient to corroborate the accomplice witness testimony, and that the evidence was legally insufficient to support his convictions for engaging in organized criminal activity.[1] We address each of Gonzalez's arguments, but do so separately. *See Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (refraining from imposing legal sufficiency standards upon a review of accomplice witness testimony under Article 38.14).

### *Accomplice Witness Corroboration*

Gonzalez claims the evidence was insufficient to corroborate the accomplice witness testimony as required by Article 38.14, which provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence *tending to connect* the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) (emphasis added). Article 38.14, known as the accomplice witness rule, reflects a legislative determination that accomplice testimony implicating another should be viewed with some level of caution. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). However, the accomplice witness rule does not require the non-accomplice evidence to be sufficient in itself to establish the accused's guilt

---

[1]Gonzalez also argues the evidence is factually insufficient to support his convictions. However, the Texas Court of Criminal Appeals has recently held that the legal sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of the offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

beyond a reasonable doubt. *Id.* Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Id.* "All that is required is that there be *some* non-accomplice witness evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Id.* (emphasis in original). The "tends-to-connect" test is not difficult to satisfy. *See Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). Even seemingly insignificant circumstances may satisfy the test. *Id.* Moreover, no precise rule can be formulated as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. *Gill*, 873 S.W.2d at 48. Each case must be judged on its own facts. *Id.*

In reviewing corroboration under the accomplice witness rule, we eliminate all accomplice witness testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence need not be sufficient by itself to establish guilt; the non-accomplice evidence must simply link the accused in some way to the commission of the crime, such that rational jurors could conclude this evidence sufficiently tended to connect the accused to the offense. *Id.* One accomplice witness's testimony may not corroborate the testimony of another accomplice witness. *Badillo v. State*, 963 S.W.2d 854, 857 (Tex. App.—San Antonio 1998, pet. ref'd). When reviewing corroboration under the accomplice witness rule, we view the evidence in the light most favorable to the jury's verdict. *Gill*, 873 S.W.2d at 48.

Although Gonzalez argues there was no non-accomplice witness evidence tending to connect him to the charged offenses, our review of the record leads us to conclude otherwise. There is some non-accomplice witness evidence that tends to connect Gonzalez with the commission of these offenses. The money taken in the Taco Palenque robbery was placed in an

IBC money bag. When police searched Gonzalez's garage they found an IBC money bag like the one taken in the Taco Palenque robbery. The two assailants in the Luby's and the Taco Palenque robberies wore black ski masks. Two black ski masks were found in Gonzalez's garage. Pistols were used in the Glass Kitchen and Taco Palenque robberies. Two pistols were found in Gonzalez's garage. Semi-automatic weapons were used in the Luby's robbery. A bag containing ammunition for a variety of weapons, including semi-automatic weapons, was found in Gonzalez's garage.

Additionally, the non-accomplice witness evidence showed Gonzalez was a regular customer at the Glass Kitchen before the robbery but was no longer a customer after the robbery. The non-accomplice witness evidence also showed Gonzalez's brother worked at Luby's and knew that there would be an unusually large sum of money in the safe at the time the robbery was committed.

Viewed in the light most favorable to the jury's verdict, rational jurors could conclude this evidence sufficiently tended to connect Gonzalez to the offenses. We conclude article 38.14's corroboration requirement was satisfied.

### Sufficiency of the Evidence

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the record, including accomplice witness testimony, in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899.

Gonzalez acknowledges that the State's theory was that he was a party to the robberies. Nevertheless, Gonzalez argues the evidence was insufficient to support his conviction under this theory because the evidence shows, at most, that Gonzalez was some distance away at the time of the robberies, and therefore, could not have solicited, encouraged, directed, aided, or attempted to commit the robberies in question. "A person is criminally responsible for an offense committed by the conduct of another if…acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense…" TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2003).

Here, both Hernandez and Camarillo testified that they met with Gonzalez and Mendez before the robberies; that Gonzalez gave them directions about how to commit the robberies; that Gonzalez told them when to commit the robberies; that Gonzalez drove them to an apartment complex to pick up the vehicles used in the commission of the robberies; that Gonzalez followed them to the restaurants immediately before the robberies; that Gonzalez told them he would serve as a lookout during the robberies; that they met with Gonzalez after the robberies; and that during this meeting Gonzalez handed them their share of the robbery proceeds. Camarillo also testified that the guns and ski masks used by him and Mendez in the Luby's and Taco Palenque robberies were found inside the vehicles supplied by Gonzalez.

Based on this evidence, a rational jury could have concluded Gonzalez solicited, encouraged, directed, aided, or attempted to commit the robberies. We, therefore, conclude the evidence was sufficient to support Gonzalez's convictions.

## MOTION TO SUPPRESS

In his second issue, Gonzalez argues the trial court erred in denying his motion to suppress evidence seized from his residence pursuant to a search warrant. Laredo Police

Investigator Primo Guzman submitted a signed affidavit detailing information he had received from multiple sources that led him to believe Gonzalez was involved in several robberies, and that evidence of this involvement would be found at Gonzalez's residence. The magistrate accepted the affidavit and issued a search warrant that resulted in the seizure of evidence presented at trial. Gonzalez moved to suppress the evidence claiming the affidavit incorrectly described the premises to be searched and did not contain sufficient information to give rise to probable cause. The trial court denied Gonzalez's motion to suppress and the evidence was presented to the jury.

An appellate court's review of a magistrate's decision to issue a warrant requires a highly deferential standard of review. *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). This standard is "based on the Fourth Amendment's strong preference for searches conducted pursuant to a warrant and the need for an incentive to encourage police to use the warrant process." *Id.* As long as there was a substantial basis for concluding that probable cause existed, an appellate court should uphold a magistrate's probable cause determination. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). A magistrate will find probable cause when, under the totality of the circumstances, a fair probability exists that evidence of a crime will be found at a specified location. *Id.* at 272. When reviewing a magistrate's determination, an appellate court should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Id.* at 271. When in doubt, the court is instructed to defer to all reasonable inferences the magistrate could have made. *Id.* Accordingly, we adopt a highly deferential approach to our review of the magistrate's decision to issue the warrant to search Gonzalez's property.

First, Gonzalez argues that the affidavit is invalid because it lists his address as 619 Meadow when in fact he lives at 621 Meadow. However, the affidavit provides a detailed physical description of the house, including stating that it is a "two story pink in color stucco residence with a red tile roof" and that there is a "fence with pink in color pillars and a white iron gate in front of the residence." The detailed physical description of the residence acted as a safeguard to any numbering errors in the address.

Second, Gonzalez argues that the affidavit is invalid because it lists Hipolito Gonzalez and Ricardo Camarillo as being in possession and control of the premises. However, a simple review of the affidavit shows that these names are listed alongside Gonzalez's name under a heading identifying all parties in possession and control of the locations to be searched. Nowhere in the affidavit are Hipolito Gonzalez and Ricardo Camarillo listed as being in exclusive possession and control of the residence.

Finally, Gonzalez argues that the affidavit is invalid because it does not disclose when one of the sources provided information to the affiant, Investigator Guzman. The purpose for including details about the timing of the information received is to ensure that the information is still relevant and has not become stale. *See Uresti v. State*, 98 S.W.3d 321, 336 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In the affidavit, Investigator Guzman states the source discussed the Taco Palenque robbery, which took place on January 23, 2008. The affidavit was made on February 14, 2008. From this, the magistrate could have inferred the source provided the information in the three weeks before the affidavit was signed. Because the information was provided to Investigator Guzman so close in time to the issuance of the warrant, there was little chance of the information being stale or irrelevant.

Based on a common sense reading of the entirety of the affidavit, we conclude that there was a substantial basis for a finding of probable cause. We, therefore, overrule Gonzalez's second issue.

## PROSECUTORIAL MISCONDUCT

In his third issue, Gonzalez alleges the State engaged in prosecutorial misconduct that was so egregious it deprived him of his constitutional right to a fair trial. In order to properly preserve error resulting from prosecutorial misconduct a defendant generally must (1) make a timely and specific objection on the grounds of prosecutorial misconduct, (2) request an instruction for the jury to disregard the comment, evidence, or argument improperly put before it, and (3) move for a mistrial. *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). However, error preservation is not required when the misconduct is so prevalent that it infects the trial and makes the conviction a denial of due process. *Jimenez v. State*, 240 S.W.3d 384, 411 (Tex. App.—Austin 2007, pet. ref'd) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The burden to prove a constitutional violation is significantly higher than that of overturning a properly preserved objection. *See id.* Prosecutorial misconduct does not assume a constitutional dimension unless the evidence presented is so insubstantial that but for the misconduct no conviction would have occurred. *Id.* at 412 (citing *Guidroz v. Lynaugh*, 852 F.2d 832, 838 (5th Cir. 1988)).

Here, Gonzalez acknowledges he did not preserve any of his prosecutorial misconduct complaints by objecting on the ground of prosecutorial misconduct. Nevertheless, Gonzalez contends we should reverse his conviction because the prosecutorial misconduct in his case was so prevalent that it infected the trial and made his convictions a denial of due process. We first

explain the substance and context of each of these complaints and then evaluate their overall effect on Gonzalez's trial.

### *Testimony about Gonzalez's brother*

According to Gonzalez, the prosecutor engaged in misconduct when he elicited testimony from Laredo police detective Garcia that he had interviewed co-defendants who confessed to the Luby's robbery and implicated Gonzalez and his brother, Hipolito, in the crime. Gonzalez objected to these statements, although not on grounds of prosecutorial misconduct. The trial court sustained the objection and the jury was instructed to disregard Garcia's statement.

Gonzalez further complains the prosecutor attempted to convince the jury that Hipolito had opened the rear entrance of Luby's for the robbers when the State was in possession of a videotape showing someone else had done so. However, the portions of the record cited by Gonzalez show the prosecutor eliciting testimony from the manager of Luby's that another employee, not Hipolito, opened the rear door of the restaurant on the morning of the robbery. Because the portions of the record cited by Gonzalez do not support his argument, we are unable to consider this complaint. *See Johnson v. State*, 263 S.W.3d 405, 416 (Tex. App.—Waco 2008, pet. ref'd) (stating that allegations are improperly briefed and appellate court will not consider allegations when appellant points to nothing in the record to support his position).

### *Testimony about David Mendez's murder*

Gonzalez complains the prosecutor improperly elicited testimony that gave jurors the impression that Gonzalez had murdered his co-defendant, Mendez, to keep him from testifying against Gonzalez. This alleged misconduct occurred during the presentation of the defense's case. The defense had called the defendant's mother, Margarita B. Gonzalez to testify. On direct examination, Gonzalez's mother testified about a phone conversation between Mendez's

common law wife, Hinojosa, and Gonzalez. According to Gonzalez's mother, Hinojosa told Gonzalez that she knew he had murdered Mendez. On cross-examination, the State followed up on this question and asked, "Why would Hinojosa say that your son murdered David Mendez?" The witness responded, "Because the police had told her." Gonzalez objected, and the trial court held a conference outside the presence of the jury. At this conference, the prosecutor explained that the only reason he asked the question was because the witness's testimony appeared to attack Hinojosa's credibility. Gonzalez requested an instruction for the jury to disregard the witness's statement. The trial court granted Gonzalez's request and instructed the jury to disregard the statement.

### *Testimony and argument about finances and court-appointed counsel*

Gonzalez complains the prosecutor improperly elicited testimony about Gonzalez's income and made arguments about his court-appointed counsel. Gonzalez testified at trial. During cross-examination, the prosecutor asked Gonzalez about his finances and why he had a court-appointed attorney. Gonzalez made no objection to these questions. During closing arguments, the prosecutor told the jury that as taxpayers they would be paying for Gonzalez's defense. Gonzalez objected to this argument as improper argument. The trial court sustained the objection and the jury was instructed to disregard the argument.

### *Argument about stolen vehicles*

Gonzalez complains about the prosecutor's argument suggesting that three stolen vehicles were found at Gonzalez's residence, when in fact only one of the vehicles found at the residence had been reported stolen. Here, we disagree with Gonzalez's characterization of this portion of the record. Initially, the prosecutor stated, "[The masks] were found in that same truck that was reported stolen just like the other two vehicles that were used in his own garage." The prosecutor

then stated, "The truck that was in the house was reported stolen." Although the prosecutor's initial comment was confusing, the prosecutor's next comment clarified the matter. When viewed in its entirety, the prosecutor's argument did not amount to prosecutorial misconduct.

### *Evidence and argument about items found in the search of Gonzalez's residence*

Gonzalez complains it was misconduct for the prosecutor to have elicited evidence about items found at Gonzalez's house, such as pepper spray, masks, and shotgun shells. Nevertheless, we conclude these items were properly admitted to show preparation or a common scheme or plan in committing the robberies.

Gonzalez also contends that it was improper for the State to argue to the jury that the IBC bank bag found at Gonzalez's residence was the same one that had been taken in the Taco Palenque robbery. To fall within the realm of proper jury argument, the argument must encompass one of the following areas: summation of the evidence presented at trial, reasonable deduction from the evidence, answer to opposing counsel's argument, or a plea for law enforcement. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). The State is permitted to draw reasonable inferences from the evidence and is to be afforded wide latitude in its arguments as long as the argument is supported by the evidence and made in good faith. *Id*.; *Stewart v. State*, 995 S.W.2d 187, 190 (Tex. App.—Fort Worth 1999, pet. ref'd). We conclude the argument about the IBC bank bag was reasonably supported by the evidence and nothing indicates it was made in bad faith.

### *Argument about leading Mendez to a life of crime*

Gonzalez alleges it was misconduct for the prosecutor to argue to the jury that Gonzalez had led Mendez to a life of crime. Throughout the trial there was ample evidence presented showing the relationship and history between Gonzalez and Mendez. Again, the prosecutor's

argument was a reasonable inference to draw from the evidence and nothing indicates it was made in bad faith.

To sustain this issue, we would have to conclude that prosecutorial misconduct so infected Gonzalez's trial with unfairness that the resulting convictions were a denial of due process. *See Jimenez*, 240 S.W.3d at 411-12. And, because Gonzalez did not object to the alleged prosecutorial misconduct, he bears the heavy burden of showing that the evidence was so insubstantial that but for the prosecutorial misconduct he would not have been convicted. *See id*. at 412.

As previously shown, some of the complaints raised by Gonzalez involve evidence or argument that was proper. Other complaints raised by Gonzalez involve evidence or argument that the jury was instructed to disregard. Nothing in the record suggests the jury did not heed these instructions. None of the complaints raised by Gonzalez rises to the level of prosecutorial misconduct. Thus, the record fails to demonstrate that prosecutorial misconduct infected the trial to such a level that Gonzalez was denied his constitutional right to a fair trial. Nor can we say that but for prosecutorial misconduct Gonzalez would not have been convicted. We overrule Gonzalez's fourth issue.

## ADMISSION OF CO-DEFENDANT'S STATEMENTS

In his fourth issue, Gonzalez argues that the trial court erred by allowing statements allegedly made by deceased co-defendant Mendez to be presented to the jury. The State offered these statements through Erika Hinojosa, Mendez's common law wife. According to Hinojosa's testimony, Hinojosa asked Mendez about the Luby's robbery after she had learned about it on the news. In response, Mendez told her about his involvement in the Luby's robbery. Mendez admitted that he and Camarillo committed the robbery and that they were armed. Mendez said

Gonzalez provided the guns used in the robbery and waited for them in a truck while they committed the robbery. Mendez stated Gonzalez and Hipolito had planned the robbery. Mendez said Hipolito, who was working at the restaurant, knew exactly how much money was going to be in the restaurant on the day of the robbery. Mendez explained Hipolito had left the back door open on the morning of the robbery, and he and Camarillo entered through the back door. Gonzalez objected to this testimony on the basis of lack of confrontation, hearsay, and unfair prejudice. The trial court overruled all of these objections.

On appeal, Gonzalez concedes the statements made by Mendez were nontestimonial in nature and, thus, the Confrontation Clause would not necessarily bar their admission. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Walter v. State*, 267 S.W.3d 883, 889 (Tex. Crim. App. 2007). Nevertheless, Gonzalez argues the statements should have been excluded because they lacked corroborating circumstances clearly indicating their trustworthiness as required by Texas Rule of Evidence 803(24).

Texas Rule of Evidence 803(24) is the hearsay exception for statements against penal interest. TEX. R. EVID. 803(24); *Walter*, 267 S.W.3d at 889. The rule provides a two-step foundation requirement for admissibility. *Walter*, 267 S.W.3d at 890. First, the trial court must determine if the statements, considering the circumstances, subject the declarant to liability and whether the declarant realized this when he made the statements. *Id*. Second, the court must determine if there are sufficient corroborating circumstances that clearly indicate the trustworthiness of the statements. *Id*. at 891. When evaluating the second requirement, courts consider a number of factors, including: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant, (2) whether the declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5)

the relationship between the declarant and the party to whom the statement is made, and (6) the existence of independent corroborative facts. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999).

Here, Mendez made the statements in response to questions from his common law wife about his involvement in the robbery. Statements made to loved ones or family members do not raise the same trustworthiness concerns as those made to investigating officers. *Walter*, 267 S.W.3d at 898. Mendez's guilt was not inconsistent with Gonzalez's. And, the statements were further corroborated by other evidence that mirrored parts of Mendez's account of the robbery. For example, other evidence showed that there were two armed assailants who entered the restaurant through the back door. We conclude there were sufficient corroborating circumstances that clearly indicated the trustworthiness of the statements.

Gonzalez further contends that even if Hinojosa's testimony was allowable under the Rule 803(24) hearsay exception, the trial court should have disallowed it as unfairly prejudicial. Rule 403 of the Texas Rules of Evidence provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. When making the decision to exclude relevant evidence, a trial court must balance (1) the inherent probative force of the evidence, (2) the proponent's need for the evidence, (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that is not equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

It is clear from the record that Hinojosa's testimony bore significant probative force and was valuable in proving the State's case in chief. Gonzalez presented no evidence that this testimony suggested a decision on an improper basis, and it certainly did not distract the jury from the main issue of the trial. Gonzalez's contention that Hinojosa was an unfit witness due to mental deficiency is unsupported by the record. Gonzalez elicited testimony from Hinojosa that she was treated for ADHD and bipolar disorder about four years before trial, but never introduced evidence of how this might affect her ability to accurately recall the events of her testimony. Gonzalez's complaint appears to stem solely from the fact that the statements were damaging to his case. Unfair prejudice arises from evidence that suggests a decision on an improper basis, not from the mere fact that the evidence injures an opponent's case. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). Furthermore, under Rule 403 the trial court is afforded substantial discretion in balancing the probative value of the evidence against its prejudicial effect. *Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). We see nothing in the record that suggests the decision to include the testimony amounted to an abuse of this discretion.

We conclude that the trial court acted within the limits of Rule 803(24) in allowing Hinojosa's testimony. We further conclude that the trial court did not abuse its discretion in denying Gonzalez's request to disallow the testimony as unfairly prejudicial. We overrule Gonzalez's fourth issue.

### DENIAL OF MOTION FOR MISTRIAL

In his fifth issue, Gonzalez argues the trial court erred in denying his motion for a mistrial. After the trial began, one of the jurors advised the trial court that her religious beliefs prevented her from sitting in judgment of another person. She told the trial court she had cried

when she was selected for the jury and she had been unable to eat or to think since the trial began. After explaining the situation to the prosecutor and the defense counsel, the trial court stated he believed the juror was "going through a disability" and he was "prepared to excuse her and find that, in fact, there is a disability…a disability that will not enable her to function as a juror in this case." In response, defense counsel pointed out that during voir dire he had asked the prospective jurors if any of them knew of any reason why they could not be fair and impartial, and that this juror failed to bring up her religious beliefs. Defense counsel then advised the trial court that he thought the only solution was to declare a mistrial. The trial court denied the motion for mistrial, excused the disabled juror, and substituted an alternate juror in her place.

Whether a juror is disabled is within the discretion of the trial court. *Rivera v. State*, 12 S.W.3d 572, 578 (Tex. App.—San Antonio 2000, pet. ref'd) (citing *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999)). A juror is disabled only when he or she is physically, emotionally, or mentally impaired in some way that hinders the juror's ability to perform his or her duty as a juror. *Id*. When a regular juror becomes unable or disqualified to perform his duties, Texas law requires that the disabled juror be replaced with the first alternate juror. TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (West Supp. 2011).

According to Gonzalez, the issue here is not about the juror having a disability but about the juror withholding information. Gonzalez argues that the juror withheld information about her religious beliefs during voir dire and in doing so interfered with his right to have his case heard by a fair and impartial jury. Relying primarily on *Salazar v. State*, Gonzalez argues the trial court was required to grant a mistrial instead of replacing the disabled juror with an alternate juror. 562 S.W.2d 480, 482 (Tex. Crim. App. 1978). In *Salazar*, a juror failed to disclose on his juror information sheet and during voir dire that he had been a witness in another criminal case. *Id*. at

481-82. The trial court learned of the juror's failure to disclose his past experience as a witness in a criminal trial, but nevertheless allowed the juror to remain on the jury. *Id*. The defendant moved for a mistrial, but the motion was denied. The Court of Criminal Appeals held the denial of the motion for mistrial was error because the defendant was denied the opportunity to strike the juror during voir dire. *Id*. at 482-83.

Gonzalez's argument is premised on his assertion that the juror in this case, like the juror in *Salazar*, withheld material information. Thus, Gonzalez argues his case requires the same result as *Salazar*. We disagree. The juror in the present case was not asked about her religious convictions. Instead, during voir dire, defense counsel asked the jurors, "Do any of you know of any reason why you could not be fair and impartial if selected to serve on this particular case?" This was a broad question, directed at the jurors' partiality, rather than their religious beliefs or their ability to serve as jurors. Unlike the situation presented in *Salazar*, the juror in the present case did not withhold information. And, the juror's conduct in no way affected Gonzalez's right to have his case heard by a fair and impartial jury because the juror did not remain on the jury.

Here, the juror showed physical and emotional manifestations consistent with a juror disability. *See Rivera*, 12 S.W.3d at 578. Thus, the trial court did not abuse its discretion in finding the juror was disabled. *See id*. Thereafter, the trial court followed the proper procedure when it replaced the disabled juror with an alternate juror. *See* TEX. CODE CRIM. PROC. ANN. art. 33.011(b). The trial court did not err in denying Gonzalez's motion for mistrial. We overrule Gonzalez's fifth issue.

## INDICTMENTS

In his sixth issue, Gonzalez raises several complaints about the indictments. Gonzalez maintains the State failed to properly amend the indictments, and that his convictions for

engaging in organized criminal activity are void because the indictments never vested the trial court with jurisdiction over these offenses.

An indictment serves two functions: it provides a defendant notice of the charges against him and vests a trial court with jurisdiction. *Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995). To comprise an indictment sufficient to vest a trial court with jurisdiction, an instrument must charge a person with the commission of an offense. *Id*. at 477; TEX. CONST. ANN. art. 5, § 12(b). But defects in an indictment, even substantive ones, do not deprive the trial court of subject-matter jurisdiction. *Kirkpatrick v. State*, 279 S.W.3d 324, 328-29 (Tex. Crim. App. 2009) (citing *Teal v. State*, 230 S.W.3d 172, 181-82 (Tex. Crim. App. 2007)); *Cook*, 902 S.W.2d at 477. For example, an indictment is not void if it omits an element of the offense. *Cook*, 902 S.W.2d at 477. A charging instrument qualifies as an indictment if it "accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." *Duron v. State*, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).

Section 71.02(a) of the Texas Penal Code, which defines the offense of engaging in organized criminal activity, provides in relevant part,

> A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person *commits or conspires to commit*…aggravated robbery…[or other enumerated offenses].

TEX. PENAL CODE ANN. § 71.02(a) (West 2011) (emphasis added). Thus, the offense of engaging in organized criminal activity can be committed in one of two ways: either the defendant can *commit* one or more of the offenses listed under section 71.02(a), or the defendant can *conspire to commit* one or more of these offenses. When the State alleges that a defendant has committed, rather than conspired to commit, one of the enumerated offenses, there is no requirement that the

State allege or prove the existence of any overt acts. *Compare State v. Duke*, 865 S.W.2d 466, 467-68 (Tex. Crim. App. 1993) (concluding overt act allegation in indictment for engaging in organized criminal activity was not required when the indictment alleged the defendants had committed the illegal act), *with Chambless v. State*, 748 S.W.2d 251, 253 (Tex. App.—Tyler 1988, no pet.) (concluding omission of overt act allegation from indictment for engaging in organized criminal activity was fundamental error when the indictment alleged the defendant had conspired to commit the illegal act).

Here, the grand jury returned three separate indictments, one pertaining to each criminal transaction. Each of these indictments charged Gonzalez with multiple counts of aggravated robbery and one count of engaging in organized criminal activity by committing the offense of aggravated robbery. More than three months before the trial began, the State moved to amend each of the indictments to allege the defendants committed the offense of engaging in organized criminal activity by conspiring to commit the offense of aggravated robbery and to allege overt acts.[2]

Almost six months before trial began, on July 13, 2009, the trial court signed an order granting the motion to amend the indictment pertaining to the Luby's robbery. This order fully reproduced the original indictment with the amendment language. The record does not contain signed orders amending the indictments pertaining to the Glass Kitchen and Taco Palenque robberies, nor does it show the trial court amended the indictments themselves. Nevertheless, when the indictments were formally read before the jury, they included the amendment language set out in the motions to amend the indictments. The record does not show Gonzalez ever

---

[2]The State filed three motions to amend the indictment. The motion to amend the indictment concerning the Luby's robbery was filed on June 24, 2009. The motion to amend the indictment concerning the Glass Kitchen robbery was filed on July 14, 2009. The motion to amend the indictment concerning the Taco Palenque robbery was filed on October 6, 2009. Trial began on January 11, 2010.

objected to the indictments as read before the jury, or otherwise complained about a failure to properly amend the indictments.

The crux of Gonzalez's complaint is that the indictments for engaging in organized criminal activity were fatally defective because they failed to include any overt act allegations. In making this argument, Gonzalez asserts none of the indictments was properly amended[3] and refers only to the original indictments. Even if we assume the indictments were not properly amended, the trial court would not have been deprived of jurisdiction. The original indictments charged Gonzalez with engaging in organized criminal activity by committing the illegal acts, not by conspiring to commit the illegal acts. Thus, these indictments were not required to include any overt act allegations. *See Duke*, 865 S.W.2d at 467-68 (concluding there was no overt act requirement when the indictment alleged the defendants had committed the illegal act). Further, the original indictments accuse Gonzalez with the commission of the offense of engaging in organized criminal activity with enough clarity and specificity to identify the penal statute under which the State intended to prosecute. *See Duron*, 956 S.W.2d at 550-51. We, therefore, conclude the trial court was vested with jurisdiction over the offenses of engaging in organized criminal activity. We overrule Gonzalez's sixth issue.

### CONCLUSION

The judgments of conviction are affirmed.

Karen Angelini, Justice

DO NOT PUBLISH

---

[3]The indictment concerning the Luby's robbery was properly amended. *See Aguilera v. State*, 75 S.W.3d 60, 64 (Tex. App.—San Antonio 2002, pet. ref'd) (holding the amendment of the indictment was effective when the trial court granted the State's motion to amend and reproduced the language of the original indictment with the amended language in its order).